2366, Solid 21, Inc. v. Breitling USA, Inc. Good morning, and may it please the Court, Amy Saharia of Williams & Connolly for Appellant Solid 21. The Court should reverse, because a jury could find on this record that Breitling's unexplained decision in 2010 to begin using Solid 21's incontestable mark, red gold, is not fair use. The decision below overlooks genuine disputes of material fact as to all three elements of Breitling's affirmative defense of fair use. I'd like to focus my argument on the two elements on which the District Court reversed itself on Breitling's decision for reconsideration, and those are the elements of good faith and descriptive use. If I may, let me start with good faith. This case illustrates the wisdom of this Court's admonition that subjective issues such as good faith are typically inappropriate for resolution on summary judgment and trademark cases. And that's particularly so here where Breitling bears the burden to prove good faith as a matter of law. The District Court's error here as to good faith is the same error the District Court and the EMI Catalog case made, which was to look only to Breitling's evidence of good faith, but to overlook the conflicting evidence of bad faith. A jury could find for Solid 21 on the element of good faith for at least four reasons. First, the fact that Breitling switched from the alternative term to Solid 21's trademark term, red gold, without explanation for why it did that. Second, the fact that Breitling was on notice of the trademark and had knowledge of the trademark. Third, the fact that consumers were confused as a result. How did they have notice? Well, they certainly had actual notice as early as 2011, which is when... When it was published in the magazine, right? Well, that was earlier. So there was extensive media coverage of the mark, including in industry-specific publications as early as 2004. They had their ad in International Watch in 2010, didn't they, where they used red gold? Yes, Your Honor. There was extensive coverage of our mark in publications such as Modern Jeweler and other industry publications as early as 2004. We think they certainly were on constructive notice at the time that they adopted the mark in 2010, but we sued them in 2011. So at a minimum, they had actual notice as early as 2011 and have continued to use the mark to this day. Now... What is in the record that they actually knew is the fact that we sued them in 2011. Yes, and that just leaves one year when they started using the mark in 2010, and we think the record at least shows constructive notice given the extensive coverage of the mark in the industry. Now, with respect to the decision to adopt the mark in 2010, the law is clear that a decision to switch from an alternative term, in this case, rose gold, to a trademark term is evidence of bad faith. This court recognized that in the EMI... I have a question there, too. I didn't see anything about why that switch happened. Is that sort of just a hole in the record? That's correct, and that was their burden to fill that hole. There's no explanation in the record as to why they started using the term red gold. The restatement, Section 28, says in plain language that a shift by the actor from other descriptive words to the trademark term after another's adoption of the term as a trademark can indicate bad faith, and this court's decision in the Tiffany versus Costco case, the court said that when a defendant adopts a trademark term in identical words, it is that defendant's burden to explain itself, and we don't have that explanation here. Is it enough that they just changed the percentage of copper in with their gold, and that they had found red gold more descriptive than rose gold? Isn't that enough of an explanation? There's no evidence of that. There's no evidence that they changed the percentage of copper in their watches, and in fact, the only evidence is to the contrary, because we have evidence that they used the terms red gold and rose gold to describe the same color on the watch. It's not as if they were the only ones using the term red gold. The record does show, pages 806, 866, numerous advertisements by Omega, Patek Philippe, Hobel, Corum, Montemblant, Richard Mill, all using the term red gold with regard to describing their watches. Why is, are they, were they, I mean, it's a descriptive term. I read your brief with a little bit of astonishment that I was familiar with the term red gold, and your characterization of it as being a term that didn't exist other than with your client's determination to use it as a trademark. It's very well known, appreciated, even in Livonia, New York, for God's sakes. If it's permeated to Livonia, it's got to be fairly well known, and apparently it was well known to at least seven other manufacturers of watches, all of which used them, a period of time prior, back into 1999, to describe the watches that they used. And they did use them with regard to watches that were gold that happened to look a little bit different than regularly gold watches. Sure, so you want to- This is an incredibly descriptive term. I disagree, but let me offer two responses. You disagree? I do, Your Honor, and I think at a minimum- I'd like to see, I'd like to take you out and have a, we'd go to some place and ask a group of people if they understood what the term meant. I bet you'd lose that bet. Well, that's what I'd like to tell Your Honor, what the record shows about that, because Breitling's own expert did that. Breitling's own expert, Mr. Keegan, this is at JA2420, asked consumers to identify desirable watch materials. Any, they could list any watch materials they could think of. Not one consumer mustered the term red gold, even though multiple consumers produced the term rose gold. All really interesting. Yes, and Solid 21 produced its own expert. Mr. Erickson, who did a similar survey, he actually showed pictures of Breitling's products and Solid 21's products to consumers and asked them to describe the materials. And again, not one consumer could come up with the term red gold to describe those products. So at a minimum, that is evidence in the record that creates a conflict on whether the term red gold has descriptive meaning. So you say at least the jury ought to be able to have that opportunity. Exactly, Your Honor. We did not cross-move on the issue of fair use. You would want me on your jury, but in any event, that's fine. Well, you don't sit in Connecticut, so that would mean you would not be on our jury. Geez, in Connecticut, you'd think they'd really know. I mean, that's kind of a high-brow place. Well, these consumers all had to be pre-screened. I love this case. I really enjoy this case. I do, too, Your Honor. Well, it's well-briefed. You've both done a nice job. Thank you. On the issue of- It seems like it became sort of- Red gold became like rose gold for men, and it became something that was understood in the industry as descriptive. And maybe this is after the time of discovery, but is it possible that at the time, it was something that was more of a stolen idea, but not an intent to use a mark? In other words, it was descriptive, but it wasn't something that they may have understood to be marked. So there's some evidence in the record, I think this goes to just Leslie's question, that after the time that Solid 21 began using the term as a mark, that more watch manufacturers started using the term themselves. We view that as evidence of infringement, not evidence that- But they all did it curiously. They didn't do it with regard to describing a platinum watch or a nickel watch. They did it in describing a gold watch that had a mix of gold and copper in it. So they didn't use the trademark to describe anything other than a red gold watch. But the same manufacturers were calling their watches rose gold or pink gold before they made that switch, and a jury could find- Well, in 1999, Omega was calling it red gold. And this is before your guy was even in business. Not at all, Your Honor. His first use of the term as a- Well, before he'd become popular. And before he'd registered the mark. That's correct. He registered the mark in 2003, but the first use of the mark was in 1989, and that's reflected on the certificate of registration. Okay, so, but, I mean, there's no example of using red gold other than in conjunction with a gold watch which contains copper in it. Is there? In this record? No, not in- Anywhere? Let me just ask you right now. Right now, is there anywhere in this record that you've produced, and you're both good lawyers, and you know the record well, is there any advertisement by Breitling in which they describe a watch  No, Your Honor. I'm not aware of- You don't find that curious? I don't find that curious, and it's for this reason. Watch manufacturers often describe, or identify the materials in their watches with trademarked names or proprietary names. Just one example is Rolex. Rolex has trademarked the word Everose, and it uses that word as a sub-brand for its rose gold watches. The same with Omega. Omega now does not use red gold. It uses what it has trademarked as Sedna gold. It's a special word it's come up with to advertise its rose gold watches. A consumer could see the capitalized words red gold right underneath the names of Breitling's watches, and reach the same conclusion that that is a special- All lowercase? No, it's uppercase. Well, most of the ads are lowercase. There's a couple I'll give you that are uppercase. In the same type, as they also say, Mother of Pearl. Stainless steel? Stainless steel. They describe them all in lowercase as features of the watch. I don't dispute those terms are also reflected in the advertisements or the websites, but those are terms that have long-standing descriptive meaning. Unlike red gold, there's at least a conflict on whether consumers understand the term red gold to be descriptive, or whether they instead understand it to be a source identifier. No one's arguing that anyone would identify stainless steel as a source identifier. Red gold is different. It doesn't have that long understanding by consumers in the same way that stainless steel does. And of course, there's also the social media posts where in the very same line of hashtags with Breitling's own trademarks such as Navitimer, it included red gold and a hashtag by itself. And we think that's additional evidence from which a consumer but from which a jury could find use as a mark or at a minimum non-descriptive use. Unless the court has further questions. I'll reserve for rebuttal. I'll reserve a couple minutes for rebuttal. Thank you. Ms. Pangan. Good morning, your honors. And may it please the court, I'm Hazel Pangan. I'm here on behalf of the appellees. Will you speak very loudly? I have tinnitus and as if you're scolding the panel. Okay. We'll forgive you. Go ahead. Thank you, your honor. Hazel Pangan on behalf of the appellees Breitling USA Inc and Breitling SA also known as Breitling AG. Collectively, I'll refer to them as Breitling. Your honor, I'm going to address my colleague's points. The notion that there is a tribal issue of fact here as to good faith is not supported by the undisputed facts in the record. My colleague cited the EMI case but that case involved facts that are significantly different from the case at hand. In particular, the court found that the defendant there's use of the alliterative phrase swing, swing, swing set to a tune of a song that was selected for being similar to Benny Goodman's song Swing, Swing, Swing was not it was evidence that there was a tribal issue as to whether there was good faith use in the term Sing, Sing, Sing The court also found that had the defendant there used the term sing instead or other alternative phrases like hit it then there could have been fair use in the use of that term. This notion that the existence of alternative terms forecloses fair use is simply not supported by the law in particular this circuit's precedent. Before we get to synonyms I'm a little bit troubled by the gaps in the record that came up earlier that there's no explanation given for the switch to describe the same product in the same color from rose gold to red gold in 2010 and there's it seems like also a gap in evidence about notice whether it's constructive or actual and those seem to me like fact questions that the jury should sort out in addition to the other things that are briefed. Well your honor the use of the term red gold the Breitling executives and management personnel testified and their deposition transcripts are in the record they testified that each time the term red gold was used it corresponded to a watch that was made of the 5N gold and copper alloy that's a standard that's articulated in ISO 8654 in an international standards organization standard 8654 for gold alloys so they were describing the mix of copper and gold and when they used red gold it had more copper that's correct your honor under the ISO standard which was promulgated in 1987 well before any claimed first use of the term red gold by the appellant the ISO standard defined a 5N gold alloy as a mixture of copper and gold um that corresponded to the color red the appellant below did not dispute and in fact conceded in its opposing statement of facts or additional facts presented in opposition to brightlink summary judgment motion that ISO 8654 does describe colors of gold alloys so is your argument that the use of red gold in 2010 corresponded to some kind of a change in the copper content of I thought there was a watch at least one that was exactly the same that was called red gold and before that it was called rose gold is that wrong? your honor yes um that watch is a 5N watch it is the same watch and at one point in time on the website does any of the metallurgy you know ISO stuff that you are talking about have to do with that change your honor at one point in time the website did reflect the watch as rose gold and then it was eventually corrected to reflect the watch's description as red gold but at all times the watch was made of red gold a 5N and the fact that rose gold and red gold were used interchangeably does not change the outcome of the fair use analysis your honor by appellate's concessions rose gold and red gold are synonymous and there's simply no holding in any precedent that the existence of an international    synonymous with a fair use analysis as far as the notice of the trademark there's no your honor pointed out that in 2010 Breitling advertised in the international watch magazine which predated solid 21-sided advertisement in the same magazine that's correct your honor but the law in this circuit states that mere knowledge of a plaintiff's trademark does not defeat a claim of fair use and does not per se constitute evidence of bad faith well your honor if an advertiser in my case Breitling the fact that it did not do a search prior to its use of the term red gold is actually supportive of the fact that its use of the term was not as important as the term red gold as well as publications intended for lay people to describe this gold and copper alloy there's also an article that was published by the metropolitan museum of art here in New York that refers to this golden alloy in copper practice by the ancient Egyptians I'm sorry to come back to this I don't understand how you square that with the change in 2010 of calling something that you used to call rose gold red gold you honor rose and red gold are related alloys in the same process so the record is replete with instances where actors in the commercial marketplace have used the term interchangeably and the use of one over the other does not itself reflect an intent to use the term as a mark or intent to trade upon the good will of the appellant I have in front of me a page from a joint appendix it's 2605 and it has two pictures of the Navitimer automatic 35 the one that's denominated 18 carat red gold has much more of the copper gold alloys isn't that correct to be technically precise your honor using 5n for a watch made of a gold alloy with a greater copper content red gold is more accurate and more precise nevertheless a rose gold watch is still a species of a copper gold alloy material two watches that are next to each other on that page look different one looks dare I say it redder than the other one yes your honor and that is the function of the addition of additional copper corresponding to the 5n standard under ISO 8654 my colleague referenced the case Tiffany versus Costco and that case is just entirely distinguishable on its facts and does not dictate a different outcome than that that was reached by the district court below that case involved evidence involved the term Tiffany which was named after Mr. Charles Tiffany who came up with the Tiffany setting and there was evidence that Costco in that case directed consumers to Tiffany's website wanted to use boxes that were more upscale and Tiffany looking and other evidence that are simply not here in this record below. Thank you very much. Ms. Panaghi, before you sit down again, I want to go back to Judge Parks' question. Why change from rose gold to red gold? I mean bad faith is a tough issue to do as a matter of law. It's intensely fact laden. Why switch from rose gold to red gold? Because both terms are descriptive. There's no evidence in the record when you look at the accused advertisements indicating that the term was used in any other way other than to describe the material constituting 5N as testified unanimously by the solid 21 management personnel who were deposed in this case. And their deposition transcripts are in the record and they are not disputed. Also, your honor, the focus of the fair use inquiry requires . I'm sorry, your honor. Had Breitling always used rose gold prior to the time of the mark? I wouldn't say always, your honor. There are times when the terms that red gold was used possibly even before 2010. That's reflected in the record. I don't know, your honor, as far as the actual catalog predating 2010, but the catalog that was submitted as part of the evidence below with the expert report of Breitling's metallurgical expert, Gary Smith, the earliest date that I believe that catalog has is 2010. Your honor, I see that my time is up. Thank you very much. Thank you. We are all done. Counsel didn't point to any evidence, any deposition testimony in which Breitling's executives said that Breitling switched to 5N gold and that is why it started using the term red gold. But that evidence does not exist in this record. The evidence that does exist shows that Breitling used the term rose gold and red gold to describe the very same watch. Does the switch alone get you an issue of fact or do we still have to look at how they used the term red gold after they started using it? The switch alone gets us an issue of fact as to good faith because they have not come forward. Even though red gold itself is quite descriptive? It has little uniqueness to it, does it? I disagree for the reasons we discussed earlier. If you lose that argument with me, tell me why we can't look at how they used it independently of why they used it. I'm not saying you can't look at how. Of course the court can look at how they used it and the jury can look at that below, but where they've used the far more prominent well-known term rose gold until the time that solid 21 trademarked red gold and then they suddenly switched to red gold without explanation, a jury could infer from that that they are using the term to leverage the good will in that mark that solid 21 has spent money and years investing into. I do think that creates an issue. If that combined with all the other issues I referenced with respect to good faith, the fact that consumers are confused and the notice to right-wing of the mark. Unless the court has further questions, we ask the court to reverse. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I'll take the case under advisement and that concludes our arguments for today. I'll ask the deputy to adjourn. Court is